IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY MILES, d/b/a SANDOVAL
COUNTY WATCHDOG,

        Plaintiff,

vs.                                          No. CIV 97-0969 JP/WWD

BERNIE LUJAN, Chairman of the
Planning and Zoning Commission of
Sandoval County, acting under color of
state law, in his individual and official capacities,

        Defendant.

## MEMORANDUM OPINION AND O R D E R

      The subject of this Memorandum Opinion and Order is defendant's "Motion for Summary Judgment" (Doc. No. 23), filed January 26, 1998.  After thoroughly considering the applicable pleadings, facts, and law, I conclude that defendant's motion for summary judgment should be granted as to the First Cause of Action of plaintiff's First Amended Complaint.  I decline to exercise jurisdiction over plaintiff's state law Causes of Action (Second, Third, and  Fourth Causes of Action) under 28 U.S.C. § 1367(c) and, therefore, those Causes of Action will be dismissed without prejudice.

## FACTUAL BACKGROUND

      The facts, viewed in the light most favorable to plaintiff Gary Miles are as follows:

      Mr. Miles is the publisher and editor of a newspaper entitled *Sandoval County Watchdog*. He began publishing the monthly paper in March of 1997, although he did not publish an April, 1997 edition.  The paper is distributed free from establishments such as grocery and convenience stores,

governmental agencies, and banks. There are no written limitations on the number of papers that a person may take. The paper also has between 30 and 40 paying subscribers.

Defendant Bernie Lujan is the Chairman of the Planning and Zoning Commission of Sandoval County, New Mexico. The Commission conducts its meetings in a room at the Sandoval County Courthouse. On May 20, 1997, Mr. Lujan was chairing a Commission meeting.

Also on May 20, 1997, Mr. Miles brought approximately 125 of the 5,000 copies of the May, 1997 edition of the *Sandoval County Watchdog* to the Sandoval County Courthouse. The May edition of the paper contained a front page article written by Mr. Miles that was critical of Mr. Lujan and the way in which he was performing his duties as Commissioner. Mr. Miles took approximately 20 to 25 copies of the paper into the courthouse and left approximately 100 copies in his car. He placed the 20 to 25 copies on a table or ice machine[1] outside the room where the Commission was conducting its meeting. The table also had copies of the agenda of the Commission meeting on it. The table was in a public hallway of the courthouse. No government business was being conducted in the hallway. Sometime after placing the papers on the table, Mr. Miles went into the Commission meeting.

While the meeting was in progress, Mr. Lujan left the meeting room without adjourning the meeting, which continued in his absence. After Mr. Lujan entered the public hallway, he picked up a copy of the *Sandoval County Watchdog* and looked at it for approximately 10 seconds, reading the article that was about him. He then picked up the entire stack of newspapers, handed them to a janitor who had a trash barrel, and "asked her to be sure to make sure these get thrown away."

---

[1] For ease of reference, I will simply refer to the area where Mr. Miles left the papers as the "table."

2

Deposition of Gary Miles, p. 43, l. 12-13.

Mr. Miles had followed Mr. Lujan out of the meeting room and into the public hallway.  When Mr. Lujan gave the papers to the janitor, Mr. Miles told Mr. Lujan that he "got him."  Miles Deposition, p. 43, l. 14.  Mr. Lujan told Mr. Miles that he would talk to him later and proceeded into the restroom.  Mr. Miles then retrieved the entire stack of papers from the janitor, who had not disposed of any copies, and Mr. Miles then proceeded back into the room where the Commission meeting was ongoing.  Mr. Lujan later rejoined the meeting.  After the incident, Mr. Miles distributed about 15 copies of the paper at the May 20, 1997 Commission meeting.  Mr. Lujan did not prohibit Mr. Miles from possessing the papers inside the Commission's meeting room, nor did he prohibit Mr. Miles from distributing the copies at the meeting.  The Commission took no action relative to the *Sandoval County Watchdog.*

Based on these events, Mr. Miles alleges in his First Cause of Action that Mr. Lujan acted in an official capacity under color of state law at the moment he picked up the stack of newspapers and handed them to the janitor, asking her to throw them away, and Mr. Lujan thereby violated Mr. Miles' First, Fourth, and Fourteenth Amendment rights, in contravention of 42 U.S.C. § 1983.

## DISCUSSION

### Legal Standard for Summary Judgment

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986) (quoting Fed. R. Civ. P. 1).  "A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary

3

judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact ...." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, Harsha v. United States, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325, 106 S.Ct. at 2554. In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

Mr. Lujan was not Acting Under Color of State Law

As both parties acknowledge, in order for Mr. Miles' constitutional claims to survive, he must first demonstrate that Mr. Lujan was acting in his official capacity under color of state law when he allegedly deprived Mr. Miles of his rights. Even when viewed in the light most favorable to Mr. Miles, though, the facts do not support a finding that Mr. Lujan was acting under color of state law.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031 (1941)). "[I]t is the plaintiff's burden to plead, and ultimately establish, the existence of a 'real nexus between the

defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" Jojola v. Chavez, 55 F.3d 488 (10th Cir. 1995).

Here, Mr. Lujan was in a public hallway where no official business was being conducted when he took the stack of papers. There is no evidence that Mr. Lujan did anything to indicate that he was taking the papers in his role as Commissioner. Instead, he did what any citizen who was not a Commissioner could have done - he left the Commission meeting and picked up newspapers that were offered for free to the public.[2] The fact that a Commission meeting was in progress in a room in the courthouse is of little moment. An inference simply cannot be reasonably drawn that Mr. Lujan was, in some way, "exercis[ing] power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'" West, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (internal quotation marks and citation omitted). Nor is there a nexus between his 'badge' of state authority, Planning and Zoning Commissioner,[3] and his conduct, removing the papers. The mere fact

---

[2] In support of his response, Mr. Miles submits the affidavit of Ken Brumit. Mr. Brumit states, among other things, that in his opinion a person is entitled to pick up a free newspaper only if that person intends to use the paper for informational purposes. If a person takes a free newspaper for any other purpose, Mr. Brumit believes that that person has breached a "contract" between the public and publishers of free newspapers. This "contract" is mythological at best. Mr. Brumit provides no evidence to support his claim that such a "contract" exists. His testimony on this matter is not admissible evidence that can be considered under Federal Rule of Civil Procedure 56. Mr. Brumit failed to demonstrate an expertise under Rule 703 to offer his opinion about public attitudes concerning free newspapers. Furthermore, Mr. Brumit's affidavit would not, as required by Rule 702, "assist the trier of fact to understand the evidence or to determine a fact in issue." It is common knowledge that people use newspapers, free or costly, for other than informational purposes. For example, free newspapers are used, without ever having been read, to light fires in fireplaces, to soak up oil spills in driveways, to make paper airplanes, to cover floors when repotting plants, to wrap garbage or gifts, and to keep heads dry in a sudden rain storms.

[3] The record indicates that the Planning and Zoning Commission is "a recommending body to oversee and review preliminary plat approval and plat applications and applications for subdivision ... and zoning changes." Deposition of Bernie Lujan, p. 28, l. 13-17.

5

that he picked up the papers because they contained an article critical of his work as a Commissioner does not, as Mr. Miles suggests, mean that his actions were taken as part of his duties as Commissioner.

Nor does the fact that Mr. Lujan handed the papers to the janitor for disposal provide any evidence that Mr. Lujan was acting under color of state law. Although Mr. Miles argues that Mr. Lujan "ordered" the janitor to dispose of the papers, Mr. Miles' own sworn testimony does not support this version. Mr. Miles, himself, testified that Mr. Lujan "asked [the janitor] to be sure to make sure these get thrown away." Miles Deposition, p. 43, l. 12-13. Any citizen could have asked the janitor to do the same thing. Furthermore, the janitor did not do as Mr. Lujan asked. The janitor made no effort to throw them away. Instead, she handed the papers to Mr. Miles. If Mr. Lujan had the authority, as a result of his status as Commissioner, to demand or order that the janitor get rid of the papers, it is doubtful that she would have turned them over to Mr. Miles with Mr. Lujan in such close proximity. No reasonable inference can be drawn that because Mr. Lujan asked a janitor to dispose of the stack of papers he, at that moment, was acting under color of state law.

The cases cited by Mr. Miles do not affect this analysis. For example, Mr. Miles relies on the Sixth Circuit case of Layne v. Sampley, 627 F.2d 12 (6th Cir. 1980), in which police officer Richard Sampley shot plaintiff Johnny Ray Layne while Officer Sampley was off-duty. Three days before the shooting, though, Officer Sampley had investigated a domestic disturbance complaint at Mr. Layne's house. Mr. Layne later called the police dispatcher and left a threatening message for Officer Sampley. On the day of the shooting, Officer Sampley was in civilian clothes in his own car with his wife. He was talking to other police officers and was passing around a firearm. Officer Sampley was in possession of his service revolver which he was permitted to possess under Tennessee law. Only

6

law enforcement officers were permitted to carry a handgun under Tennessee law. Mr. Layne approached Officer Sampley's car and, after a series of events, Officer Sampley shot Mr. Layne in the stomach.

> The United States Court of Appeals for the Sixth Circuit reasoned that:

> The fact that Sampley had authority to carry the weapon only because he was a police officer, that the argument's genesis was unquestionably in the performance of police duties, and that the threat was received through a police agency raised a question for the jury whether Sampley was acting under color of state law.

Layne, 627 F.2d at 13. This is quite different from a Planning and Zoning Commissioner picking up free newspapers in the public hallway of a courthouse.

As the United States Court of Appeals for the Tenth Circuit has pointed out in an unpublished opinion, even an off-duty police officer who gives notice of his official status by presenting a business card that identifies him as a police officer is not acting under color of state law unless the totality of the circumstances suggests otherwise. Strange v. Porath, No. 96-2072, 1996 WL 733766 (10th Cir. Dec. 24, 1996). In Strange, Officer Martin Porath gave his business card to Damon Strange, an insurance agent, in an effort to obtain Officer Porath's personal insurance file. Mr. Strange, believing Officer Porath was acting in his official capacity as a police officer, gave Officer Porath the insurance file. When Officer Porath attempted to leave Mr. Strange's office with the file without Mr. Strange's permission, a fight broke out. The Tenth Circuit held that, under these facts, Officer Porath was not acting under color of state law. Mr. Lujan, like Officer Porath, may have been a public official but, during the incident in question Mr. Lujan was not acting in his official capacity under color of state law.

Likewise, Nelson v. Streeter, 16 F.3d 145 (7th Cir. 1994), does not support Mr. Miles'

position.  In that case, the Chicago City Council passed resolutions, the purpose of which was to have

an arguably offensive painting removed from the private School of the Art Institute of Chicago.  City

Aldermen went to the Art Institute and physically removed the painting from the wall, taking it to the

Art Institute's president's office.  The Alderman told the school's president "that they were there to

carry out the City Council's resolution to remove the painting from the Art Institute."  Nelson, 16

F.3d at 147.  Under this evidence, the Alderman clearly were acting under color of state law.  Had

there been evidence that Mr. Lujan took the stack of newspapers in furtherance of some official

action of the Planning and Zoning Commission, the Nelson decision may have had some impact on

this case.  Under the facts here, however, even when viewed in the light most favorable to Mr. Miles,

Mr. Lujan was not acting under color of state law when he took the stack of newspapers from the

table in the public hallway and handed them to the janitor.

I am, nevertheless, deeply troubled by Mr. Lujan's conduct as described by Mr. Miles.  Under

Mr. Miles' version of the facts, it does appear that Mr. Lujan was trying to restrict dissemination of

a newspaper story that was critical of him.  That is, as told by Mr. Miles, Mr. Lujan was attempting

to prevent Mr. Miles from expressing views about a public official, a right the First Amendment to

the United States Constitution gives to Mr. Miles and all other citizens.  However, even if this were

Mr. Lujan's motive, it does not follow that Mr. Lujan necessarily was acting in an official capacity

under color of state law as opposed to acting as a private citizen with a bad motive.

A private citizen with an improper motive, however, is not liable under Section 1983 although that

individual may be liable under state law.  Here, as in Strange, while Mr. Lujan may be liable under

state tort law no reasonable juror could conclude that he was acting in an official capacity under color

of state law.  As a result, Mr. Lujan is entitled to summary judgment on Mr. Miles' First Cause of

8

Action.

In the Second, Third and Fourth Causes of Action of his First Amended Complaint Mr. Miles alleges state tort law claims of prima facie tort, intentional interference with prospective contractual relations and commercial advantage, and conversion.  Under 28 U.S.C. § 1367(c) those Causes of Action will be dismissed without prejudice so that Mr. Miles may pursue them in state court.

IT IS THEREFORE ORDERED that:

1.  Defendant Bernie Lujan's motion for summary judgment is GRANTED as to plaintiff's First Cause of Action of his First Amended Complaint because Mr. Lujan was not acting in an official capacity under color of state law and that Cause of Action will be dismissed with prejudice;

2.  I decline to exercise jurisdiction over plaintiff's state law Causes of Action alleged in the Second, Third, and Fourth Causes of Action of Plaintiff's First Amended Complaint and, therefore, those Causes of Action are hereby dismissed without prejudice to Mr. Miles' right to assert them in state court.

_James A. Parker_
UNITED STATES DISTRICT JUDGE